Dmitry Kheyfits (SBN 321326)
dkheyfits@kblit.com
KHEYFITS BELENKY LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: 415-429-1739
Fax: 415-429-6347

Hanna G. Cohen (*pro hac vice* to be filed)
hgcohen@kblit.com
KHEYFITS BELENKY LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Tel: 212-203-5399
Fax: 212-203-5399

*Attorneys for Plaintiff FireNet Technologies, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIRENET TECHNOLOGIES, LLC,<br><br>　　　　　　　Plaintiff<br><br>　v.<br><br>A10 NETWORKS, INC.,<br><br>　　　　　　　Defendants | Case No.: **4:18-cv-6502**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff FireNet Technologies, LLC ("FireNet" or "Plaintiff"), by way of this Complaint against Defendant A10 Networks, Inc. ("A10" or "Defendant"), alleges as follows:

## PARTIES

1. Plaintiff FireNet is a limited liability company organized and existing under the laws of the State of Georgia, having its principal place of business at The Forum, Suite 140, 3930 E. Jones Bridge Road, Peachtree Corners, GA 30092.

2. On information and belief, Defendant A10 is a Delaware corporation, having its principal place of business at 3 West Plumeria Drive, San Jose, CA 95134.

## JURISDICTION AND VENUE

3. This is an action under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, for infringement by A10 of U.S. Patent No's. 6,317,837; 7,739,302; 8,306,994; and 8,892,600 ("Patents-in-Suit").

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. A10 is subject to the personal jurisdiction of this Court because, *inter alia*, on information and belief, (i) A10 is registered to conduct business in the State of California; (ii) A10 is headquartered in the State of California; and (iii) A10 has committed and continues to commit acts of patent infringement in the State of California, including by making, using, offering to sell, and/or selling accused products and services in the State of California, and/or importing accused products and services into the State of California.

6. Venue is proper as to A10 in this district pursuant to 28 U.S.C. § 1400(b) because, *inter alia*, on information and belief, A10 maintains a regular and established place of business in this judicial district, and A10 has committed and continues to commit acts of patent infringement in this judicial district, including by making, using, offering to sell, and/or selling

accused products and services in this district, and/or importing accused products and services into this district.

## BACKGROUND

7. On November 13, 2001, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 6,317,837, entitled "Internal Network Node With Dedicated Firewall" (the "'837 Patent"). A copy of the '837 Patent is attached hereto as Exhibit A.

8. On June 15, 2010, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 7,739,302, entitled "Network Attached Device With Dedicated Firewall Security" (the "'302 Patent"). A copy of the '302 Patent is attached hereto as Exhibit B.

9. On November 6, 2012, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,306,994, entitled "Network Attached Device With Dedicated Firewall Security" (the "'994 Patent"). A copy of the '994 Patent is attached hereto as Exhibit C.

10. On November 18, 2014, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,892,600, entitled "Network Attached Device With Dedicated Firewall Security" (the "'600 Patent"). A copy of the '600 Patent is attached hereto as Exhibit D.

11. FireNet is the assignee and owner of the right, title, and interest in and to the Patents-in-Suit, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement.

## NOTICE

12. By letter dated June 13, 2018, FireNet notified A10 of the existence of the Patents-in-Suit, and of infringement thereof by A10 and A10's customers. FireNet's letter identified exemplary infringing A10 products and an exemplary infringed claim for each of the Patents-in-Suit.

13. As of the date of this Complaint, FireNet has not received any response from A10 to its letter.

**COUNT I: INFRINGEMENT OF THE '837 PATENT**

14. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

15. On information and belief, A10 has infringed, and continues to infringe, the '837 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States or importing into the United States A10 networking products and services, including, but not limited to, A10 Application Delivery Controllers ("ADC") and Convergent Firewall ("CFW") products, including their appliance, virtual machine, and cloud implementations ("Accused Products").

16. For example, on information and belief, A10 has infringed at least claim 37 of the '837 Patent by performing a method of managing access to a network attached device (NAD) in a network arrangement including a first group of nodes defining an internal network and a second group of nodes defining an external network. A network arrangement that uses Accused Products to manage access to nodes ("A10 Network") has a first group of nodes, such as, for example, servers and clients on an internal corporate network, and a second group of nodes, such as client computers accessing the various servers over the Internet (external network). Ex. E. In the network arrangement, the external network is connected in communication with the internal network by an intermediate node including a bastion firewall for protecting the nodes of the internal network from unauthorized communication originating at external nodes. The internal network includes the NAD, such as a hard-drive storage array residing on a server. *Id.* The Accused Products determine for each and every request for network access to the NAD whether each request for network access to said NAD is authorized. The Accused Products, using, for example, an Access Control List, determine for each packet (request for network access)

destined to the NAD whether it is authorized.  The Accused Products, such as an A10 ADC, provide network access to said NAD when a request is authorized.  The Accused Products, such as an A10 ADC, deny network access to said NAD when a request is not authorized.  In the above A10 Network arrangement, the NAD, such as a hard-drive storage array inside a server in the Demilitarized Zone (DMZ) attached to the ADC via a dedicated or isolated port or interface, is protected by a dedicated NAD firewall in the A10 ADC or another of the Accused Products, from unauthorized network access requests originating at the intermediate and internal and external nodes.

17. On information and belief, A10 has induced, and continues to induce, infringement of the '837 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, software developers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the Accused Products by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said products, such as deployment guides, installation guides, and instructional videos, all available at the A10 website.

18. On information and belief, A10 has committed and continues to commit the foregoing infringing activities without a license.

19. On information and belief, A10's infringing activities commenced at least six years prior to the filing of the original complaint in this action, entitling FireNet to past damages.

20. On information and belief, A10 knew the '837 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '837 Patent.

## COUNT II: INFRINGEMENT OF THE '302 PATENT

21. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

22. On information and belief, A10 has infringed, and continues to infringe, the '302 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States or importing into the United States the Accused Products.

23. For example, on information and belief, A10 has infringed at least claim 1 of the '302 Patent by making, using, offering to sell, selling in the United States or importing into the United States a network arrangement comprising a network client and at least one network attached device (NAD) residing on a same network. A network arrangement that uses Accused Products to manage access to nodes ("A10 Network") has, for example, at least one client and one hard-disk storage array residing on a server, both of which reside on the same network. Ex. E. In the A10 Network, a NAD server is disposed between the network client and the NAD. For example, an A10 Application Delivery Controller ("ADC") is disposed between a client and the server hosting the storage array, residing on the same local area network (LAN). *Id.* In the A10 Network, the NAD server is configured to electronically communicate with the NAD over a connection. For example, the A10 ADC is configured to communicate with the storage array residing in a server via a dedicated or isolated port or interface. The NAD server is further configured to receive a request contained in a data packet for network access to the NAD. In the A10 Network, the A10 ADC is configured to receive a request, contained in, for example, a TCP/IP packet, to access the storage array residing on a server. The NAD server includes computer executable instructions that, upon execution, cause the NAD server to determine whether the header of a received data packet containing the request for network access includes at least one of an IP address of a network source, an IP address of a network destination, and a

route of the data packet. The A10 ADC includes executable instructions that processes incoming packets to determine, among others, the presence of an IP Source Address field. The NAD is further configured to filter the data packet based at least on an IP address in a header of the data packet. For example, a storage array residing inside a server is configured to use, for example, an Access Control List to filter the data packets based on, for example, the IP Source Address field in the packet header. Upon execution, the computer executable instructions further cause the NAD server to determine whether the received request for network access to the NAD is authorized. Upon execution, the executable instructions cause the A10 ADC to reference an Access Control List, to determine whether the request for the Web Access server contained in the TCP/IP packet is authorized. Upon execution, the computer executable instructions provide the network client with network access to the NAD only if the request for network access is authorized, such that the NAD is protected from unauthorized access requests from the network client and other devices in a manner that is in addition to any protection afforded by a firewall. In addition to the protection afforded by a firewall as shown in Ex. E, the instructions executing on the A10 ADC provide the network client, and other network devices, such as Internet clients, with access to the hard-drive storage array only if the requests are authorized.

24.     On information and belief, A10 has induced, and continues to induce, infringement of the '302 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, software developers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the Accused Products by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said products, such as deployment guides, installation guides, and instructional videos, all available at the A10 website.

25. On information and belief, A10 has committed and continues to commit the foregoing infringing activities without a license.

26. On information and belief, A10's infringing activities commenced at least six years prior to the filing of the original complaint in this action, entitling FireNet to past damages.

27. On information and belief, A10 knew the '302 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '302 Patent.

### COUNT III: INFRINGEMENT OF THE '994 PATENT

28. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

29. On information and belief, A10 has infringed, and continues to infringe, the '994 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States or importing into the United States the Accused Products.

30. For example, on information and belief, A10 has infringed at least claim 10 of the '994 Patent by performing a method comprising processing, by a network attached device (NAD) server coupled to an internal network, a request for network access to a NAD device. An Accused Product, such as an A10 Application Delivery Controller ("ADC"), is coupled to a local area network (LAN). Ex. E at. The A10 ADC processes a request for network access to, for example, a hard-drive storage array residing on a server. The NAD device is coupled to the NAD server and configured to receive communication from an internal network only by way of the NAD server. For example, the hard-drive storage array residing on a server is coupled to an A10 ADC via a dedicated or isolated port or interface and the server is configured to receive communications only through the A10 ADC. The request for network access includes a data packet that includes at least an IP header. For example, the request for network access is a

TCP/IP packet that includes an IP header.  The NAD server comprises a NAD server firewall.  The A10 ADC includes firewall functionality, such as Access Control Lists, which protects the hard-drive storage array server from undesirable requests.  A10 determines, by the NAD server firewall, whether the request for network access to the NAD should be authorized or denied based on a filtering of at least the IP header of the data packet of the received request for network access to the NAD.  By using the firewall functionality in the Accused Products, such as the A10 ADC, A10 determines whether the request for accessing Web Access server should be authorized or denied, such as based on a filtering of the IP header of the data packet with the request.  A10 processes, by the NAD server, the data packet for communication with the NAD and enabling access to the NAD upon determining that the requested network access to the NAD should be authorized.  The Accused Product, such as the A10 ADC, processes the data packet for communication with the hard-drive storage array server and enables access to the server when a request is determined as authorized.  A10 blocks, by the NAD server, access to the NAD upon determining that the request for network access to the NAD should be denied.  For example, the Accused Product, such as the A10 ADC, blocks the request for accessing the storage array residing in a server, if the ADC determines that the request should be denied.

31. On information and belief, A10 has induced, and continues to induce, infringement of the '994 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, software developers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the Accused Products by, among other things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said products, such as deployment guides, installation guides, and instructional videos, all available at the A10 website.

32. On information and belief, A10 has committed and continues to commit the foregoing infringing activities without a license.

33. On information and belief, A10's infringing activities commenced at least six years prior to the filing of the original complaint in this action, entitling FireNet to past damages.

34. On information and belief, A10 knew the '994 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '994 Patent.

## COUNT IV: INFRINGEMENT OF THE '600 PATENT

35. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

36. On information and belief, A10 has infringed, and continues to infringe, the '600 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling in the United States or importing into the United States the Accused Products.

37. For example, on information and belief, A10 has infringed at least claim 8 of the '600 Patent by performing a computer-implemented method as set forth in the claim. Specifically, A10 receives, by a first computing device coupled to an internal network, data packets over the internal network. Ex. E.  In the A10 Network, an Accused Product such as an A10 Application Delivery Controller ("ADC") connected to a local area network (LAN) receives data packets over the LAN. *Id.*  At least some of the data packets are sent to the internal network from an external network. *Id.*  At least some of these packets are sent by an external network, such as devices outside the local network connected to the Internet. A10 examines, by the first computing device, the data packets to determine whether the data packets contain an IP address associated with an attached device coupled to a second computing device. *Id.*  For example, the Accused Product, such as the A10 ADC, examines the data packets to determine whether they

contain an IP address associated with an attached device, such as a hard-drive storage array, coupled to a second attached device, such as the storage-array server. In the A10 network, the second computing device is in communication with the first computing device and the second computing device is isolated from the internal network. *Id.* For example, the storage-array server is in communication with the A10 ADC via a dedicated or isolated port or interface and the server is not accessible to other devices, except through the A10 ADC. A10 filters, by the first computing device, data packets by determining whether the IP address in a header of the data packets is valid to determine whether to authorize data packets containing information indicative of a request for access to the attached device. The Accused Products, such as the A10 ADC, using an Access Control List, filter data packets by determining based on the IP address in the packet header, whether to authorize information indicative of the request in the packet for access of the hard drive or other memory of the server. A10 reformulates, by the first computing device, the data packets for communication to the second computing device coupled to the attached device in response to authorizing the data packets containing the information indicative of the request for access to the attached device. For example, in response to authorizing the data packets containing information indicative of the request for access of the hard-drive storage array residing in the server, the A10 ADC reformulates the data packets by changing the fields in the header, decrypting, and/or re-encapsulating the packet into another frame, for communication with the hard-drive storage array server.

38.     On information and belief, A10 has induced, and continues to induce, infringement of the '600 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners, software developers, customers, and end users, to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, the Accused Products by, among other

things, providing instructions, manuals, and technical assistance relating to the installation, set up, use, operation, and maintenance of said products, such as deployment guides, installation guides, and instructional videos, all available at the A10 website.

39. On information and belief, A10 has committed and continues to commit the foregoing infringing activities without a license.

40. On information and belief, A10's infringing activities commenced at least six years prior to the filing of the original complaint in this action, entitling FireNet to past damages.

41. On information and belief, A10 knew the '600 Patent existed while committing the foregoing infringing acts, thereby willfully, wantonly and deliberately infringing the '600 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FireNet prays for the judgment in its favor against A10, and specifically, for the following relief:

A. Entry of judgment in favor of FireNet against A10 on all counts;

B. Entry of judgment that A10 has infringed the Patents-in-Suit;

C. Entry of judgment that A10's infringement of the Patents-in-Suit has been willful;

D. Award of compensatory damages adequate to compensate FireNet for A10's infringement of the Patent-in-Suit, in no event less than a reasonable royalty trebled as provided by 35 U.S.C. § 284;

E. Declaration and finding that A10's conduct in this case is exceptional under 35 U.S.C. § 285;

F. Award of reasonable attorneys' fees and expenses against A10 pursuant to 35 U.S.C. § 285;

G. Award of FireNet's costs;

H.    Pre-judgment and post-judgment interest on FireNet's award; and

I.    All such other and further relief as the Court deems just or equitable.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Fed. R. Civ. P., Plaintiff FireNet hereby demands trial by jury in this action of all claims so triable.

Dated: October 24, 2018

Respectfully submitted,

/s/   Dmitry Kheyfits
Dmitry Kheyfits (SBN 321326)
dkheyfits@kblit.com
KHEYFITS BELENKY LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: 415-429-1739
Fax: 415-429-6347

Hanna G. Cohen
(*pro hac vice* to be filed)
hgcohen@kblit.com
KHEYFITS BELENKY LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Tel: 212-203-5399
Fax: 212-203-5399

*Attorneys for Plaintiff*
*FireNet Technologies, LLC*